IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ALVIN M. THOMAS                                                                         PETITIONER

VS.                                                         CIVIL ACTION NO. 3:16-cv-416-CWR-FKB

B. E. BLACKMON                                                                         RESPONDENT

## REPORT AND RECOMMENDATION

This case is before the Court on the petition for a writ of habeas corpus filed by Alvin M. Thomas pursuant to 28 U.S.C. § 2241 and his Motion for Summary Judgment [20]. The Respondent has filed responses to both. [14], [22]. Having considered the filings, the undersigned recommends that the motion and petition be denied.

I.   Background

Thomas is a federal inmate sentenced by the United States District Court for the District of the Virgin Islands to an 85-month term of imprisonment on two counts of Conspiracy to Interfere with Commerce by Robbery and one count of Conspiracy to Possess a Firearm in Furtherance of a Crime of Violence. [14-2] at 2. Although Thomas was incarcerated at FCC Yazoo City-Low when he filed this action, he is presently held at the Federal Detention Center at Miami, Florida. [1], [23]. His current projected release date is June 21, 2020. [14-2] at 2.

In his petition, Thomas challenges a disciplinary proceeding in which he was found guilty of refusing to give a urine sample, in violation of the Bureau of Prisons ("BOP") Disciplinary Code 110, and his resulting loss of 41 days of good time credit.

On August 9, 2015, Officer M. Gower completed an incident report charging Thomas with failing to provide a urine sample upon request. [14-6] at 2. In the report, Officer Gower states that on August 9, 2015, "Thomas was called to the compound office to provide a random

urine sample." *Id*. Gower's report documents that "Thomas was allowed to drink one cup of water once he came to the compound office[,] [and] was informed that he had 2 hours to provide a sample." *Id*.[1] The report records Thomas's "beginning time" for the urine sample as 6:03 a.m. and states that at 8:04 a.m., Thomas "still hadn't provided a sample." *Id*.

That same morning, Officer G. Stallion investigated the charge, delivered to Thomas a copy of the incident report, and advised him of his rights. *Id.* at 4. In response to the charge, Thomas stated, "I did not drink any water." *Id*. Officer Stallion referred the matter to the Unit Disciplinary Committee ("UDC"). *Id*.

On August 11, 2015, the UDC held a hearing, but Thomas refused to appear. *Id* at 3-4, *see* [14-7] at 2 (Waiver of Appearance). The UDC referred the charge to a Discipline Hearing Officer ("DHO") for further hearing, recommending "any sanctions deemed necessary by the [DHO]." *Id*. at 3. After a DHO hearing, Thomas was sanctioned with the loss of 41 days of good time credit and other privileges, not at issue here. [14-10] at 3.

Thomas pursued an administrative appeal, and on November 5, 2015, the matter was remanded for further disposition. [14-5] at 2. The reviewing officer found that the UDC failed to have Thomas complete two forms, the Notice of Discipline Hearing Before the DHO form and the Inmate Rights at Discipline Hearing form. *Id.*; *see* [14-8] at 2, [14-9] at 2. The reviewing officer directed that on remand the appropriate forms should be completed, a rehearing should be conducted, and the inmate should be informed of any finding and its basis. *Id.*

---

[1] Pursuant to Program Statement 6060.08, "Urine Surveillance and Narcotic Identification," inmates are required to submit to random urine testing and provide a sample within two hours of a request by prison staff. To aid in producing a sample, staff members must offer an inmate eight ounces of water at the beginning of the two-hour period. If an inmate fails to produce a urine sample within the two hours allotted, he is presumed to be unwilling to provide one. This presumption may be rebutted during the disciplinary process. 28 C.F.R. § 550.31(a).

On November 10, 2015, the UDC held a rehearing on the incident report. [14-4] at 3. Thomas was read his rights, the two forms were completed and signed by Thomas, and he pleaded not guilty. *Id.*; *see* [14-11] at 2, [14-12] at 2. In his defense, Thomas stated that he "was not provided any water" and that he had tried to provide a urine sample during the last ten minutes of the two-hour waiting period. [14-4] at 3. In his Notice of Discipline Hearing Before the DHO form, Thomas elected not to have a staff representative present at the DHO hearing but indicated that he wanted to call Officer Gower as a witness to testify "that he tried to use it the last 10 mins. of the 2 hrs." [14-12] at 2.

On November 24, 2015, DHO C. Grider held a rehearing on the charge. [14-13] at 2. DHO Grider acknowledged that Thomas "requested Officer M. Gower (Reporting Employee) to testify that inmate Thomas tried to provide a urine sample the last 10 minutes of the 2 hour limit." *Id*. DHO Grider explained that Officer Gower "was not called during the DHO hearing due to his testimony being adequately provided and described in . . . the incident report." *Id*.

After the hearing, DHO Grider issued a Discipline Hearing Officer Report (the "November 24 Report"). In the November 24 Report, the DHO considered Thomas's statement and defense. Specifically, the DHO recited Thomas's statement as follows:

> I admit I did not supply a urine sample. I tried to provide a sample the last 10 minutes of the two hours but could not provide one. The Lieutenant asked if I took medication to prevent me from providing a sample and I told him I did not take medication. I did not have enough fluids in my body to provide a sample.

*Id*. at 3. However, considering Officer Gower's report, the DHO found the following:

> Officer M Gower was clear in the body of his written report that on August 9, 2015 at approximately 6:03 a.m., you were ordered to provide a urine sample. Officer M. Gower documented that you were provided with a cup of water and informed you that you had two hours to provide a urine sample. At 8:04 a.m., Officer M. Gower documented that you did not provide the urine sample. The element of

3

> this offense includes the following: "a stated inability to provide a urine sample within [a] reasonable time, normally two hours."
>
> . . .
>
> Therefore, based on the staff eyewitness account of the incident and your admission, the DHO finds that some facts do exist to show you committed the prohibited act of Refusing to Provide a Urine Sample, Code 110, . . . .

*Id*. Accordingly, the DHO found that "[t]he act was committed as charged" and again disallowed 41 days of good conduct time. Id. at 3-4.[2]

In the November 24 Report, the DHO acknowledged that Thomas denied the charge. *Id*. at 2 (Section III.A.). However, in characterizing Thomas's statement, the DHO stated in Section III.B. of the report that Thomas "admitted guilt" to the charge and in Section V that Thomas "admitted guilt" and gave an "admission of guilt to the charge." *Id*. at 2-3. Thereafter, on January 26, 2016, the DHO issued an amended Discipline Hearing Officer Report (the "January 26 Report"), changing the "admitted guilt" in Section III.B. to "denied guilt" and the "admitted guilt" and "admission of guilt to the charge" in Section V to "denied guilt" and "denial of guilt to the charge," respectively. *Compare* [14-13] at 2-3 to [14-1] at 2-3. In the January 26 Report, the DHO also added the following statement in both sections: "The DHO treated this statement as a denial to the charge as you stated an excuse as to why you did not provide a urine sample." [14-1] at 2-3. Officers delivered a copy of the January 26 Report to Thomas that same day, but Thomas refused to sign it. Id. at 4.

After exhausting his administrative remedies, Thomas filed the instant petition. [1], [2]. In sum, he argues that the DHO violated his due process rights by amending the November 24

---

[2] DHO Grider also disallowed other privileges but noted that Thomas had already served those restrictions. [14-13] at 4.

Report and by not calling his requested witness at the hearing. [1] at 6-7. He also argues that Officer Gower violated his due process rights by not providing him an adequate amount of water. *Id*. at 7.

II. Discussion

In ground one, Thomas claims that the DHO violated his due process rights by amending the November 24 Report. Specifically, he argues that in the January 26 Report, the DHO "chang[ed] the facts" of the DHO hearing, thus violating 28 C.F.R. § 541.8(f). [2] at 2.

The DHO did not, however, change the facts in the January 26 Report. The facts on which the DHO based his decision were contained in the statements of Officer Gower and Thomas, and the recitation of their statements in the November 24 Report and January 26 Report are identical. *Compare* [14-13] at 3 and [14-1] at 3. In the January 26 Report, the DHO simply corrected a mischaracterization of Thomas's statement, clarifying that Thomas did not admit guilt to the charge but rather only admitted that he did not provide a urine sample. Contrary to Thomas's claim, the DHO did not change the facts. This claim has no merit.[3]

In ground two, Thomas claims that the DHO violated his due process rights by not calling his requested witness, Officer Gower, to testify at the DHO hearing. Thomas wanted to call Officer Gower to testify that he had "tried to provide a urine sample the last 10 minutes of the 2 hour limit." [14-1] at 2; *see* [14-12] at 2. The DHO explained that he did not call Officer Gower "due to [Officer Gower's] testimony being adequately provided and described in . . . the incident

---

[3] Further, § 541.8(f), which Thomas cites as a basis for this claim, contains no restriction on a DHO amending a report. *See* 28 U.S.C. § 541.8(f). Even if it did, a violation of an administrative regulation or guideline would not, without more, violate due process or amount to a constitutional violation. *See Davis v. Lithicum*, 574 Fed. App'x 379, 380 (5th Cir. 2014)("[a] prison official's failure to follow prison procedural rules does not, without more, give rise to a constitutional violation.")

5

report." [14-1] at 2.

The United States Supreme Court has held that an inmate should be allowed to call witnesses in a disciplinary proceeding, but "[p]rison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses[,] . . . whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases." *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974). The Court further held that an inmate does not have a constitutional right to confrontation and cross-examination in a disciplinary proceeding. *Wolff*, 418 U.S. at 568.

*Wolff* affords a DHO discretion in whether to call an inmate's requested witness, and the DHO did not violate Thomas's due process rights by not calling Officer Gower. The DHO did not call Officer Gower due to lack of necessity, explaining that Gower's testimony was "adequately provided" in his incident report. Officer Gower's testimony was also unnecessary, considering Thomas's stated reason for calling him. Thomas stated that he wanted to call Officer Gower to show that he "tried to provide a urine sample the last 10 minutes of the 2 hour limit." But only Thomas has personal knowledge of whether he actually "*tried* to provide a urine sample," and Thomas was allowed the opportunity to testify at the DHO hearing and explain his efforts to provide a urine sample. Further, Thomas has provided no evidence by affidavit or otherwise to support that if called, Officer Gower would have testified as Thomas claimed. In sum, the DHO's decision not to call Officer Gower was within his discretion afforded by *Wolff*, and Thomas has failed to show any prejudice from the DHO not calling Officer Gower as a witness. *See Hallmark v. Johnson*, 118 F.3d 1073, 1080 (5th Cir. 1997)(applying *Wolff* and requiring a showing of prejudice for habeas relief on due process claim).

In ground three, Thomas argues that Officer Gower violated his due process rights by not providing him an "adequate amount of water." [2] at 4. In fact, he contends that the Bureau of Prisons ("BOP") policy itself, codified at 28 C.F.R. § 550.31, violates due process by "limit[ing] officers from providing an inmate with ample water to provide a sample." *Id*. Pointing to § 550.31's requirement that "staff . . . offer the inmate eight ounces of water at the beginning of the two-hour period," Thomas postulates that if it required "16 or even 24 ounces[,] that would have been a reasonable amount that would have enabled me to provide a urine sample." *Id*. Thomas also argues that he should have been given more than two hours to produce a sample. *Id*.

Another § 2241 petitioner also challenged these provisions of the BOP drug testing policy in *Ramey v. Hawk*, 730 F. Supp. 1366 (E.D.N.C. 1989). After finding the BOP drug testing policy in general to be constitutional under the four-part test in *Turner v. Safley*, 482 U.S. 78, 89-90 (1987), the court explained the standard to be applied in analyzing the specific provisions of the eight-ounce fluid intake limitation and two-hour time limit under the BOP policy. The court stated,

> When a mode or method chosen by the BOP to effectuate a policy is challenged, the court generally defers to the judgment of the BOP. Courts only grant judicial relief if it is shown that "prison officials have exercised their discretionary powers in such a manner as to constitute a clear abuse or caprice." . . . If the mode or method chosen to effectuate a constitutional policy has any rational basis, it will be upheld by the court.

*Ramey*, 730 F. Supp. at 1372 (internal citations omitted). The court then addressed these specific provisions as follows:

> The two-hour time limit and eight-ounce fluid intake limitation placed on an inmate are based on medical opinion that a person would be able to urinate if requested to do so, with the parameters set by the BOP policy. Said parameters are not arbitrary and capricious. To the contrary, they represent reasonable time and fluid restrictions in which to require an inmate to produce a sample for

7

> drug testing.
>
> The court finds the BOP urine testing policy to be constitutional; it is reasonably related to legitimate penological interests. The test parameters chosen to effectuate the policy are not arbitrary and capricious. The time and fluid restrictions are well within the range of physiological reasonableness, and do not overstep the bounds of being constitutionally sound.

*Id*.

The undersigned agrees with the rationale and analysis in *Ramey*. Accordingly, the undersigned finds that Thomas's due process claim that the BOP policy should require officers to give more than eight ounces of fluid at the beginning of the two-hour period (and more than two hours to produce a urine sample) are without merit.

Having addressed each of the specific grounds raised in Thomas's petition, the undersigned also acknowledges that all of Thomas's claims allege that his due process rights were violated. The due process rights afforded an inmate in a disciplinary proceeding were established by the Supreme Court in *Wolff*. Those rights include: (1) written notice of the charges at least 24 hours prior to the disciplinary hearing; (2) an opportunity to call witnesses and present documentary evidence; (3) the aid of a fellow inmate or staff member due to illiteracy of the inmate or complexity of issues; (4) an impartial tribunal or judge; and (5) a written statement by the factfinder explaining the evidentiary basis of the decision and reasons for the disciplinary action. *Wolff*, 418 U.S. at 559-72.

Thomas was given written notice of the charges at least 24 hours in advance of the hearing. As addressed above, Thomas was afforded his rights under *Wolff* to call witnesses and present evidence. Further, Thomas declined the aid of a fellow inmate or staff member, an impartial DHO heard the charges against him, and the DHO provided him with a written

8

statement of the basis of the decision and reasons for the disciplinary action. Thomas was, therefore, afforded his due process rights in the subject disciplinary proceeding.

The DHO's decision to revoke 41 days of Thomas's good time credits must only be supported by "some evidence." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). The charge against Thomas was supported by Officer Gower's statement and Thomas's own admission that he did not provide a urine sample in the two-hour period allotted by the regulation. Accordingly, the DHO's decision is supported by a constitutionally sufficient evidentiary basis, and Thomas is not entitled to habeas relief.

### III.     Conclusion

For the reasons stated above, Thomas's motion [20] should be denied, his § 2241 petition should be denied, and this matter should be dismissed with prejudice.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court.  28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Respectfully submitted on the 31st day of January, 2019.

  /s/ F. Keith Ball
UNITED STATES MAGISTRATE JUDGE